Mr. Chief Justice Sharkey
delivered the opinion of the Court.
On the 7th of May, 1839, Helm recovered a judgment against Henry A. Moore, Daniel Woodward, and C. P. Smith. On the 11th of June, an execution issued, and was placed in the hands of the sheriff, and on the 28th of June, Moore died. This execution was returned without a levy, and on the 20th of December, an alias fi. fa. issued, which was afterwards quashed. On the 12th of December, 1840, another execution was issued, and levied on the property of Moore ; and Davis, his administrator, moved to quash it, because it had been irregularly issued ; which motion was overruled.
The principal ground relied on, for reversing the judgment of the Court, in refusing to quash the execution, is, that it issued without a scire facias to revive against Moore’s administrator, and the question is, whether, under the circumstances, a scire facias was necessary.
The precise point, now under consideration, was several times decided by the former Supreme Court, and we had supposed it to be a settled question. Wilkinson v. Kirkland, Walker’s Rep. 155; Hicks’s Administralor v. Moore, ib. 66; Hubert v. Williams, ib. 174. The practice has no doubt conformed to these decisions, but their' authority is now called in question, and we are asked to adopt a different rule of decision. We are much averse to this interruption of settled questions ; but apart from the importance of adhering to former decisions, it is by no means clear that we should be justified, on principle, in departing from the rule of these decisions. On the contrary, we believe the decisions are sustained ; but as the question has been elaborately argued, it is proper that we should do something more than give them a mere passive recognition. As an open question, it would certainly be attended with some perplexity in the solution, and perhaps leave some ground for doubt, as to the correctness of the result.
In several of the States of the Union, it seems to be considered *33 necessary, that all judgments, where parties have died before execution, should be revived for or against their legal representatives ; but whether this is by virtue of some statutory provision, or by the Common Law, or by virtue of the force of the English statute, we are not informed.
To revive judgments in real actions, when it becomes necessary to revive, the scire facias is a Com/non Law writ; but in personal actions, it was given by the statute of Westm. 2, 18 Edw. 1, for the sake of establishing uniformity in proceedings, and to prevent the delay and expense of a new suit on the' judgment, which, by the Common Law, was the only remedy. 7 Bacon, 130 ; 2 Saunders, Rep. 6, n. (1) , 2 Tidd’s Practice, 1102. As the same reasons, to a very great extent, exist in favor of reviving judgments in both descriptions of actions, it is rather remarkable that our statutes are not more explicit in their provisions. Still we think} by a liberal construction in favor of a remedy, they go far to sustain the decisions of the Supreme Court in the cases referred to. By reference to some of the statutory provisions, they will show, as we think, that such construction ought to be given them. Our provision is, that on writs of scire facias for the renewal of judgments, no judgment shall be rendered on the return of two nihils, unless, &c. ; and such scire facias may be directed to any county in the State where the defendant may reside ; the succeeding section directs the mode of service. H. & H. Dig. 583, sec. 26, 27. Here, we perceive, the legislature had in view the mode of reviving judgments by scire facias; but whether that body had in its mind the use of this writ in real actions only, or whether its indiscriminate use in all actions was contemplated, is only to be gathered from inference. It is scarcely probable that the legislature thought only of its use in real actions, and that the parties to personal actions should be left to the Common Law remedy on the judgment. We must remember, that we have but very few real actions triable in a court of Common Law jurisdiction, if we have any.
The 29th section of the same statute provides, that, if either party die before final judgment, his executor or administrator may be brought in by scire facias, to prosecute or defend the suit. The 31st section provides for bringing in the heir or devisee, if either *34 party to a real action shall die before judgment; and the 32d section provides for rendering judgment, if either party should die between 'verdict and judgment, and for bringing in the representative, if either party die before verdict. These several provisions are taken from the English statutes ; and besides these, the scire facias is the appropriate remedy in other cases corresponding to its use in England.
These statutes seem to have been adopted in view of the English law, in its general application of'the scire facias. Several of them profess to apply and regulate it, as an existing remedy, in the cases specified. In England, we know, it was the universal method of bringing in a new party, either before or after judgment; the first “provision, above referred to, seems to have contemplated its use in the same way here. In England it was necessary, if either party died after judgment, and before execution, that the judgment should be revived, and the scire facias was the proper process to bring in the new parties. 2 Saund. 72 m; 2 Tidd, 1118 ; 3 Bacon, 404. Here, also, judgments may be revived, and as no other writ is given, it would seem to follow that this is the proper one. The rule is, that wherever a new party, who was not a party to the judgment, is to be charged or benefitted by the execution, it must be revived for or against him. The reason of this is, that he may have an opportunity, if a defendant, of pleading a release ; of showing payment, or any other reason why the execution should not run. An administrator or executor falls within the reason of this rule. To them it has always been held to apply : the bare possession of property is sufficient to entitle them to their day in court. But.there'is an exception to this rule. If the execution emanated in the lifetime of the defendant, or if it even bears teste in his lifetime, then a scire facias to revive is not necessary. The counsel for the defendant in error insists that this case is within the exception. It is assumed, that the reason of the exception was because a lien had attached in the lifetime of the defendant; and as, by our law, a judgment is a lien, hence it is concluded that a scire facias was unnecessary. In support of this position, a decision from Alabama is relied on, which does support the view taken by counsel. This position, however, we do not think sustainable. *35 We think that the decision in Alabama, and also the argument of counsel, based upon it, are predicated on a misconception of the reason for the exception in the English rule. We apprehend that the question of lien or no lien had no influence in dispensing with the scire facias.
Why is it, that a new party must be brought into Court ? It is, that he may have an opportunity of defeating the execution, by showing payment, release, or any other matter in defence. Does not this reason hold as well, when there is a lien, as when there is none ? The answer must be in the affirmative. Because there was a lien before the defendant’s death, are his representatives thereby precluded from showing a discharge or payment ? Has a judgment any more sanctity, because it operates as a lien ? Surely not. The reason, then, for bringing in new parties by scire facias, is as strong where there is a lien as where there is none. The exception, then, did not originate out of a failure of the reason of the law. Why then was it, that in England no sci. fa. was necessary, when the execution emanated in the lifetime of the defendant, or even bore teste before his death ? Because, say the authorities, as the defendant could say nothing against the execution, there is no reason to believe that his representatives could, and it is therefore unnecessary to summon them. 7 Bacon, 138. And why is it assumed, that the defendant could say nothing against the execution ? The answer is found in the presumptions of the law, and it is this ; —the execution is an entire thing ; the law presumes that it issues, and bears teste, instantly after the rendition of judgment, and that the sheriff begins immediately to execute ; and that, having begun tb execute in the lifetime of the defendant, by seizure of property, the conclusion is, that he had nothing to urge, or he would have stopped the execution immediately. Hence the books say, that as the defendant, in his lifetime, had nothing to say against it, it is not to be supposed that his representatives have. This legal presumption is sometimes sustained by a fiction ; as, if the defendant die before the execution issues, but after the time of which it is to bear teste, still the law looks upon it as having issued imm'e-diately after judgment, and determines the rights of parties accordingly. At Common Law, the goods were bound from the teste of *36 the execution, it is true, but we do not find the English authorities giving this as the reason for dispensing with the sci. fa., nor is it the true one, as is manifest from several additional considerations. The scire facias, at Common Law, was used only to revive judgments in real actions, because it was the only means of getting possession of the realty, as no action could be sustained on the judgment. In such actions, the judgment was of higher dignity and more conclusive than a lien ; it operated as a final determination of the parties’ rights. Surely then it was equivalent to a lien ; still, to revive such judgment a sci. fa. was necessary ; then surely it is not dispensed with by a mere general lien. But again ; if the plaintiff sues out an elegit, it binds the land from the rendition of judgment, aqd yet he will not be permitted to sue out an elegit after a year and a day, or after the change of parties, without a scire fa-cias, unless it can be tested as in the lifetime of the defendant. 2 Tidd’s Practice, 1104. This would seem to be decisive of the question, since the effect of an elegit is to make the judgment a lien. The argument, then, based upon the existence of alien as a reason for dispensing with a scire facias to bring in the representatives of a deceased defendant, falls to the ground. We are thus led to sustain the decisions of the Supreme Court; and there is an additional reason which is entitled to much weight. This is very much a matter of practice, and it was competent for the courts at an early day to adopt this method of bringing in parties; and having done so, it should not be disturbed, unless for some glaring intrinsic error.
But it is further insisted, that as one execution issued in the lifetime of Moore, it was not necessary to revive. This point might be urged as to the execution which was in existence at the time of Moore’s death ; but the subsequent executions, which issued and bore teste as of a time after his death, are, as to bis administrator, new executions, subject to the operations of all the reasons which exist in favor of reviving the judgment. If we could adopt the presumption, that execution issued as soon as judgment was rendered, and that all subsequent executions related back to the teste of the first, and were in effect but the same process, then this reason might be forcible ; but we are not prepared to go thus far. Besides, *37 this too was a point involved in the decided cases, and we must consider it as settled.
But a further question arises in this case, which is not entirely free from difficulty ; and that is, Where there are several defendants, and one dies, what is the effect ? The rule seems to be, that in such case there is no need of a scire facias as to the survivors. The execution, however, must issue against all, so that it may correspond with the judgment, and then it may be levied on the goods of the survivors, who can claim contribution. 2 Saund. Rep. 12 h ; 2 Tidd, 1120. As to the survivors, it makes no difference ; they are not new parties. But I apprehend such execution cannot be levied on the goods of the deceased until the judgment is revived. The whole reason of the rule applies to his administrator with all its force, with the additional one, that, as there are other parties, so much greater is the probability, and so much stronger is the presumption, that it has been paid or discharged. On this view of the subject, there was no objection to the execution as against the survivors ; but the levy on Moore’s property was irregular, and should have been set aside. The judgment must therefore be reversed, and the judgment rendered here which should have been rendered in the Court below.